IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES R. FENTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-1692-RGA |
| | : | |
| DAVID HENDERSON and the | : | |
| DELAWARE BOARD OF PAROLE, | : | |
| | : | |
| Defendants. | : | |

James R. Fenton, James T. Vaughn Correctional Center, Smyrna, Delaware.   Pro Se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants.

**MEMORANDUM OPINION**

March 31, 2023
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff James R. Fenton, an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, proceeding *pro se*, filed this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, alleging disability discrimination during the parole process. (D.I. 1). Before the Court are Defendants' motion for summary judgment and Plaintiff's motion to strike, motion to compel, and motion for default judgment. (D.I. 53, 56, 73, 75). The motion for summary judgment and motion to strike are fully briefed.

## I.   BACKGROUND

Following a conviction for first-degree rape and other charges arising from his and his co-defendant's repeated rape of his ex-fiancé, Plaintiff was sentenced to life in prison. (D.I. 70-1 at 4, 8, 13). Plaintiff has been an inmate at the JTVCC since July 1984. (*Id.* at 1). Plaintiff has been eligible for parole since July 20, 2004. (D.I. 1 at 2). He has schizophrenia and receives medication by injection twice per month to treat the condition. (D.I. 54-2 at 4). He has had no disciplinary problems since 2013, and he has not received any write ups, major or non-major, since 2009. (D.I. 1 at 2; D.I. 70-1 at 22). The Delaware Department of Correction ("DDOC") Multi-Disciplinary Team at JTVCC has recommended Plaintiff for parole three times. (D.I. 69 at 3).

On September 14, 2017, the State of Delaware Board of Parole ("the Board"), via a letter signed by Defendant David Henderson, the Chairperson of the Board, denied Plaintiff's request to be released to parole supervision. (D.I. 1-1 at 1). The letter stated that the Board had considered Plaintiff's "testimony, institutional records,

1

assessments/evaluations, prior criminal history, and program participation," and had

concluded that he continued to pose a risk to the community. (*Id.*). The Board

recommended that Plaintiff work with his counselor and Connections to develop a plan

designed to provide Plaintiff an appropriate transition to the community that contained

long-term housing options and mental health treatment. (*Id.*). Plaintiff fulfilled the

request, and, on December 19, 2018, the Board advised him in another letter signed by

Henderson that the Board had deferred a decision in his case and was requesting that

the DDOC provide the Board with an extensive mental health evaluation and an ABEL

assessment.[1] (D.I. 1 at 1-2; D.I. 1-1 at 2). On June 12, 2019, in a third letter signed by

Henderson, the Board again denied parole, citing its conclusion that Plaintiff continued

to pose a risk to the community, based on the same considerations from the September

2017 letter. (D.I. 1-1 at 3). The Board recommended that Plaintiff "work with [his]

counselor to develop a plan for continued mental health programming/counseling and

victim empathy programs." (*Id.*). Plaintiff was advised that he would be eligible to

reapply for parole consideration at any time after the expiration of forty-eight months;

that is June 2023. (*Id.*). Plaintiff alleges that the Board intentionally denied him parole

in violation of the ADA due to his schizophrenia. (D.I. 1 at 2).

Defendants moved for dismissal pursuant to Federal Rule of Civil Procedure

12(b)(6) on the grounds that the claims against the Board are barred by the Eleventh

Amendment, and that the Complaint failed to plead a plausible disability discrimination

---

[1] The ABEL assessment is "an objective measure of sexual interest and is used to determine the risk a sex offender presents to the community." (D.I. 54-1 at 3).

.

2

claim. (D.I. 27). I denied the motion, holding that the Board was not immune to

Plaintiff's ADA claim and that Plaintiff had adequately alleged an ADA claim. (D.I. 36,

37). In explaining that Plaintiff's allegations survived dismissal, I explained:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff's allegations that he has schizophrenia bring him within the definition of an individual with a disability. In addition, the Complaint pleads enough facts to show that Plaintiff was otherwise qualified for parole, having been eligible since 2004, recommended for parole three time[s] by the Classification Board, and completed a transition plan as requested by the Board.
>
> Both times when the Board denied Plaintiff parole, it recommended that Plaintiff work with his counselor and Connections to develop a transition plan for mental health treatment/programming/counseling. (D.I. 1-1 at 1, 3). While the denial decisions do not expressly state that the Board based the denials on schizophrenia, that point is not dispositive at the pleading stage. *See Taylor v. Henderson*, 632 F. App'x 70, 75 (3d Cir. 2015) (citing and quoting *Thompson v. Davis*, 295 F.3d 890, 896 n.3 (9th Cir. 2002) "('[W]hile the 1999 Board decision does not disclose the Board's reliance on Thompson's history of substance abuse, the decision does not affirmatively prove that the Board did not' rely on it.)." Indeed, the 2017 and 2019 Board decisions suggest that the Board may have considered Plaintiff's schizophrenia given that both recommend Plaintiff, with his counselor, develop mental health treatment/programming/counseling plans. *Id.*

(D.I. 36 at 5).

Defendants now move for summary judgment, arguing that that there is no

genuine issue of material fact that Plaintiff's schizophrenia was *not* the sole reason for

the denial of his parole request, but, rather, that the record evidence establishes that he

was denied parole based on his commission of a serious sexual offense, the risk that he

would reoffend, and the Board's conclusion that he continues to pose a risk to the

community. (D.I. 53, 54). As evidence, Defendants provided a mental health evaluation

3

the Board received from mental health clinician Robert Gingrich, which included an

"Analysis of Risk" section that described Plaintiff's ABEL Assessment, Iowa Sex

Offender Risk Assessment ("ISORA"), and Sexual Violence Risk-20 ("SVR-20")

assessment. (D.I. 54-2). Gingrich's evaluation recounted that Plaintiff "attempted to

manipulate the ABEL assessment by not rating the question section of the evaluation,"

and "[a]s a result, numerous scales could not be completed." (*Id.* at 5). He had a "very

problematic" "social desirability score," and "also scored at high risk of exhibitionism,

voyeurism, and fetishes." (*Id.* at 5). His scores placed him "in the severe danger risk."

(*Id.* at 6). His scores on the ISORA and the SVR-20 placed him at "moderate-high risk."

(*Id.*).

In Gingrich's explanations of the three assessments described above, he made

no mention, even implicitly, of Plaintiff's schizophrenia diagnosis. The 5-page

evaluation mentioned Plaintiff's schizophrenia diagnosis directly once, and indirectly a

second time. In a "History of Treatment" section, Gingrich noted that Plaintiff receives

"200 mg. by injection of Haldol twice per month to treat his diagnosis of schizophrenia."

(*Id.* at 4). In the "Recommendations" section, Gingrich noted that if Plaintiff were

paroled, "[i]t would be critical that he receive his 200 mg. of Haldol twice monthly." (*Id.*

at 6).

Defendants also submitted a sworn declaration from Defendant Henderson,

stating that the Board's conclusion that there is a continued risk to the community

generally leads to the denial of a parole request. (D.I. 54-1 at 2). Henderson stated

that, "[i]n many cases, . . . mental health issues played a role in the violent behavior that

4

resulted in the prison sentence that the offenders are seeking to be paroled from," and, "While the Board does not hold the existence of mental illness against offenders, the Board does examine whether an offender's mental illness has been controlled (and whether it's controlled to the point of not posing a risk to the community), whether an offender is cooperating with the prison mental health provider, and whether an offender has a plan or ability to tend to his/her mental health following release from DOC custody." (*Id.*).  Henderson further explained that the Board's December 2018 request for a mental health assessment was meant to determine the risk of Plaintiff reoffending, and he noted that Gingrich's evaluation provided the Board with the three risk-factor assessments discussed above.  (*Id.* at 3).  Finally, Henderson stated that the Board denied Plaintiff's parole request in June 2019 "due to a number of factors including the fact that the Board deemed him to be a risk to the community"; that the Board endeavors to provide "action steps" and offender can take to improve their chances of parole in the future; that following those action steps may improve the offender's chances but does not guarantee the grant of parole; which decision will again be based on the risk the offender poses to the community, as well other factors, including whether "the offender has a plan/ability to successfully transition back into the community."  (*Id.*).

Plaintiff filed a response to Defendants' motion for summary judgment, sworn under penalty of perjury, in which he heavily relied on my opinion denying Defendants' motion to dismiss to argue that I should also deny summary judgment.  (D.I. 55). Plaintiff also challenged the validity of the ABEL Assessment and the SVR-20 as assessment tools.  (*Id.* at 2).  Additionally, he argued that Gingrich's evaluation should

5

be stricken from the record because it was not signed under penalty of perjury and contained hearsay where it described the ABEL Assessment given that Gingrich did not administer the assessment and did not provide an affidavit from the individual who did administer it. (*Id.* at 5). Plaintiff filed a separate motion to strike Gingrich's evaluation for the same reasons. (D.I. 56).

Plaintiff was thereafter given additional time to conduct discovery, and both parties were advised that they could file supplements to the motion for summary judgment or opposition, should they deem them necessary. (D.I. 59, 60). Defendants filed responses to Plaintiff's interrogatories and document requests, answering some of the interrogatories, objecting to others, producing some of the requested documents, and objecting to others. (D.I. 69, 70).

Neither party filed supplements, but Plaintiff filed a motion to compel, requesting that I overrule Defendants' objections (D.I. 73), and a motion for default judgment (D.I. 75) for failure to provide the requested discovery.

## II.    LEGAL STANDARD

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

6

A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted).

## III. DISCUSSION

To establish a violation of Title II of the ADA, Plaintiff must demonstrate that he (i) is a person with a disability as defined by the ADA; (ii) is otherwise qualified for the benefit in question (parole); and (iii) that he was excluded from the benefit due to discrimination based upon disability. 42 U.S.C. § 12132; *Talley v. Supreme Court of Pa.*, 2022 WL 1701849, at *1 (3d Cir. May 27, 2022) (per curiam); *Taylor v. Delaware*

7

*Bd. of Parole*, 2017 WL 1536192, at *3 (D. Del. Apr. 26, 2017).  The Ninth Circuit has recognized:

> Title II does not categorically bar a state parole board from making an *individualized assessment* of the future dangerousness of an inmate by taking into account the inmate's disability.  Title II only prohibits discrimination against "qualified" people with disabilities. 42 U.S.C. § 12131 (defining a qualified person with a disability as a person who "meets the essential eligibility requirements for the receipt of services").  A person's disability that leads one to a propensity to commit crime may certainly be relevant in assessing whether that individual is qualified for parole.

*Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002) (emphasis added).  In *Thompson*, the relevant disability was substance abuse, and the court "h[e]ld only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories." *Id.*[2]

Assuming, *arguendo*, that Plaintiff's schizophrenia diagnosis constitutes a disability under the ADA,[3] I conclude that there is no genuine issue of material fact on this record that Defendants' denial of Plaintiff's parole request was not based solely upon his schizophrenia diagnosis, but rather was based on an individualized

---

[2] The Third Circuit has cited *Thompson* with approval.  *See Taylor v. Henderson*, 632 F. App'x 70, 75 & n.4 (3d Cir. 2015) (per curiam).

[3] Defendants argue that Plaintiff's schizophrenia diagnosis does not constitute a disability under the ADA in the context of this case because he "has not shown that he is actually disabled as defined by the ADA, in that "[t]here is no evidence that [Plaintiff's] schizophrenia currently limits one or more major life activity." (D.I. 54 at 4-5).  I do not need to decide this issue to rule on the motion for summary judgment and, accordingly, I do not.

8

assessment of the risk he posed to the community.  Indeed, the record suggests that perhaps the biggest factor in the decision to deny parole was the fact that three risk assessments placed Plaintiff at moderate-high risk to severe danger risk.  As noted, Gingrich's evaluation containing these assessments hardly referenced Plaintiff's schizophrenia diagnosis and certainly did not rely on it any meaningful way.  For these reasons, Defendants' motion for summary judgment will be granted.[4]

## IV.    MISCELLANEOUS MOTIONS

Defendants' objections to Plaintiff's discovery requests will be sustained, and Plaintiff's motion to compel (D.I. 73) will be denied, as most of the unsatisfied interrogatories and documents requests are irrelevant to his ADA claim.  Plaintiff's motion for default judgment (D.I. 75) will be denied for essentially the same reason.

## V.    CONCLUSION

Based upon the above discussion, the Court will: (1) grant Defendants' motion for summary judgment (D.I. 53); and (2) deny Plaintiff's motion to strike, motion to compel, and motion for default judgment (D.I. 56, 73, 75).

An appropriate Order will be entered.

---

[4] Plaintiff's motion to strike (D.I. 56) will be denied.  The relevance of Gingrich's evaluation was that it was considered by the Board in denying his parole request. Plaintiff's hearsay and authentication concerns are irrelevant in this context.

9